IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GENE W. SALVATI and OLIVIA JONES, individually and on behalf of other similarly situated former and current homeowners in Pennsylvania<br>　　　　　　　Plaintiffs,<br><br>　　　v.<br><br>DEUTSCHE BANK NATIONAL TRUST COMPANY, N.A. a subsidiary of DEUTSCHE BANK, AG; BANK OF AMERICA HOME LOANS SERVICING, a subsidiary of BANK OF AMERICA, N.A.; ONEWEST BANK, F.S.B.; and MCCABE, WEISBERG & CONWAY, P.C. a law firm and debt collector<br>　　　　　　　Defendants. | No. |

## NOTICE OF REMOVAL

Defendant OneWest Bank, F.S.B ("OneWest"), by its undersigned counsel, hereby removes the above-captioned action from the Court of Common Pleas of Allegheny County in which it is now pending to the United States District Court for the Western District of Pennsylvania.

Removal is based on 28 U.S.C. §§ 1332 and 1441, as amended in relevant part by the Class Action Fairness Act of 2005 ("CAFA"), and authorized by 28 U.S.C. § 1453. Removal is also based on 28 U.S.C. §§ 1331 and 1441.

As grounds for removal, OneWest states the following:

## BACKGROUND

1. This putative class action was commenced by way of a Complaint (the "Complaint") filed on June 8, 2012, in the Court of Common Pleas of Allegheny County, and docketed at No. GD-12-010095. (A true and correct copy of the Complaint is attached as Exhibit "A").

2. Plaintiffs Gene W. Salvati and Olivia Jones ("Plaintiffs") served the Complaint via certified mail, return receipt requested, and it was received by, therefore served on, Defendant OneWest on June 12, 2012. This Notice of Removal is being filed with the United States District Court for Western District of Pennsylvania within 30 days after service of the Complaint.

3. Plaintiff Salvati is a citizen of the Commonwealth of Pennsylvania and resides at 2415 Ridge Road Extension, Ambridge, Pennsylvania. Complaint at ¶ 2. Therefore, Plaintiff Salvati is deemed a citizen of Pennsylvania for the purposes of 28 U.S.C. § 1332.

4. Plaintiff Jones is a citizen of the Commonwealth of Pennsylvania and resides at 6112 Saint Marie Street, Pittsburgh, Pennsylvania. Complaint at ¶ 3. Therefore, Plaintiff Jones is deemed a citizen of Pennsylvania for the purposes of 28 U.S.C. § 1332.

5. Defendant Deutsche Bank National Trust Company ("DBNTC") is a national banking association organized and existing under the laws of the United States of America to carry out the business of a limited purpose trust company, with its principal place of trust administration located at 1761 E. Saint Andrew Place, Santa Ana, California. Therefore, DBNTC is deemed a citizen of California for purposes of diversity jurisdiction.

6. Defendant Bank of America Home Loans Servicing was merged into Bank of America, N.A. ("BOA") on July 1, 2011. Therefore, BOA is the real party in interest with respect to the claims asserted in the Complaint. BOA is a national bank with its principal place

2

of business in Charlotte, North Carolina. Therefore, BOA is deemed a citizen of North Carolina for purposes of diversity jurisdiction.

7. Defendant McCabe, Weisberg & Conway, P.C. ("McCabe") is a Pennsylvania Professional Corporation with a law office located at 123 South Broad Street, Suite 2080, Philadelphia, Pennsylvania. Complaint at ¶ 6. Therefore, McCabe is deemed a citizen of Pennsylvania for the purposes.

8. Defendant OneWest is a federally chartered savings bank with its principal place of business located at 888 East Walnut St., Pasadena, California 91101. Therefore, OneWest is deemed a citizen of California for the purposes of diversity jurisdiction. *See* 12 U.S.C. § 1464(x).

## THE ALLEGATIONS OF THE COMPLAINT

9. The Complaint alleges that Plaintiff Salvati and non-defendant New Century Mortgage Corporation ("New Century") entered into a mortgage loan transaction on or about May 8, 2006. Complaint at ¶ 8 and Exhibits A, B, C & D thereto.

10. According to the Complaint, Plaintiff Salvati's mortgage was subsequently assigned to DBNTC in September of 2011 and is currently serviced by BAC. Complaint at ¶¶ 11-12.

11. The Complaint further alleges that McCabe commenced a mortgage foreclosure action against Plaintiff Salvati on behalf of DBNTC on or about February 22, 2011 seeking, among other things, $1,450.00 in attorney's fees. Complaint at ¶¶ 16, 18.

12. The Complaint alleges that Plaintiff Jones and IndyMac Bank, F.S.B. ("IndyMac"), a non-party to this litigation, entered into a mortgage loan transaction on or about October 5, 2005, under which IndyMac loaned Plaintiff Jones $82,800.00. Complaint at ¶ 21 & Exhibit J thereto.

13. The Complaint also alleges that on or about June 11, 2008, IndyMac improperly sought to foreclose upon Plaintiff Jones's home and improperly sought to collect fees, including attorney's fees of $4,085.05, in connection with such foreclosure. Complaint at ¶¶ 24-26.

14. The Complaint further alleges that IndyMac was seized by the Office of Thrift Supervision on July 11, 2008 and the Federal Deposit Insurance Corporation ("FDIC") was named the Conservator. Complaint at ¶ 27. The Complaint erroneously alleges that IndyMac was thereafter sold to OneWest. *Id.*

15. According to the Complaint, Plaintiff Jones's mortgage was assigned by Mortgage Electronic Registration Systems ("MERS") to OneWest on April 17, 2009. Complaint at ¶ 28. OneWest then assigned Plaintiff Jones's mortgage to DBNTC on November 24, 2009. *Id.* at ¶ 29. According to the Complaint, OneWest, through its servicing unit IndyMac Mortgage Services, services Plaintiff Jones's mortgage. *Id.* at ¶ 30.

16. Plaintiffs allege that Defendants improperly sought to collected unsubstantiated and unauthorized attorney's fees in the foreclosure complaints filed against them. Complaint at ¶¶ 31-33.

17. The Complaint further asserts that, prior to initiating foreclosure proceedings, Act 6, 41 Pa. C.S.A. § 101 *et seq.* and Act 91, 35 Pa. C.S.A. § 1680.401c *et seq.*, require that the "mortgagee . . . send the Homeowner an Act 6 and/or Act 9 Notice" ("Pre-Foreclosure Notices") which contains the "mandatory contents required by Act 6 and/or Act 91," and the mortgagee that sends the notice be the mortgagee that "[m]ade the foreclosure decision and [f]iled the Foreclosure Complaint against the Homeowners." Complaint at ¶ 42.

18. According to the Complaint, Act 6 and Act 91 require a mortgagee to inform a homeowner of, among other things, the right to have a "face-to-face meeting with the

4

mortgagee" and the homeowner's right to meet with a consumer credit counseling agency. Complaint at ¶ 40.

19. The Complaint alleges that Defendants violated Act 6 and/or Act 91 "by filing and/or pursing Foreclosure Complaints prior to completing the mandatory pre-litigation process required by those Acts." Complaint at ¶ 45.

20. The Complaint avers in Count I that Defendants violated Act 6 by improperly charging and/or collecting "[f]oreclosure-related attorney's fees and legal expenses (in excess of $50) before they were 'actually incurred,'" "[f]oreclosure-related attorney's fees and legal expenses incurred before the 33-day right to cure," "[f]oreclosure-related attorney's fees and costs (in excess of $50) incurred before the 33-day right to cure expired and/or incurred prior to the commencement of its foreclosure action," "[f]oreclosure-related attorney's fees that were flat or percentage-fee-based instead of hourly," and/or "[l]iquidated foreclosure-related fees and costs (pre and/or post the foreclosure judgment) that had not been awarded by a court, that were unreasonable." Complaint at ¶ 68.

21. Plaintiffs further allege that because of the defective Pre-Foreclosure Notices, Defendants further violated Act 6 by charging and/or collecting foreclosure-related attorney's fees in excess of $50.00 prior to the commencement of foreclosure. Complaint at ¶ 73.

22. With respect to these alleged violations, the Complaint seeks an award of treble damages, attorney's fees, costs, and expenses pursuant to 41 Pa. C.S.A. §§ 501, 502. In the alternative, the Complaint seeks "set-offs computed at triple the excess charges paid," an accounting, and "an award of statutory attorney's fees under Act 6 §§ 503-504."

23. Count II of the Compliant alleges that Defendants' foreclosures initiated against Plaintiffs were defective and in violation of Act 6 and Act 91 because the required Pre-

Foreclosure Notices were not sent to Plaintiffs, were not sent by the mortgagees, were not sent by the entity that filed the foreclosure complaint, failed to include required language informing borrowers that they may have the right to refinance their loan, failed to include required language informing borrowers concerning the purpose of the face-to-face meeting with a consumer credit counseling agency, failed to inform borrowers that they have a right to meet with the mortgagee, and failed to include a mandatory list of credit counseling agencies. Complaint at ¶ 77.

24. With respect to Count II, the Complaint seeks an award of treble damages, attorney's fees, costs, and expenses. In the alternative, the Complaint seeks "set-offs computed at triple the excess charges paid," an accounting, and "an award of statutory attorney's fees under Act 6 §§ 503-504."

25. Count III of the Complaint alleges that Defendants' violations of Act 6 constitute violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. C.S.A. § 201 *et seq.* Complaint at ¶ 79. Additionally, the Complaint claims Defendants allegedly violated the UTPCPL by "overcharging and/or misrepresenting the amount that Homeowner's owed" though the Complaint does not explain the nature of the alleged overages. *Id.* at ¶ 82.

26. With respect to Count III, the Complaint seeks an award of treble damages, attorney's fees, and an accounting pursuant to 73 Pa. C.S.A. § 201-9.2(a).

27. Count IV of the Complaint generally alleges that Defendant McCabe[1] violated the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, by "demanding and/or collecting fees that were unlawful under Act 6 and/or Act 91." Complaint at ¶¶ 84-90.

---

[1] Plaintiffs purport to exclude Defendants DBNTC, BAC, and OneWest based on the "now limited facts within [Plaintiffs'] possession, custody, or control." Complaint at ¶ 84.

6

28.     With respect to Count IV, the Complaint seeks statutory damages, attorney's fees and costs for these alleged violations.

29.     The Complaint also alleges that Defendants McCabe, DBNTC, and BOA violated the Pennsylvania Fair Credit Extension Uniformity Act (the "FCEUA"), 73 Pa. C.S.A. § 2270, *et seq.* (Counts V & VI). According to the Complaint, "[i]t is illegal under FCEUA § 2270.4(a) for a debt collector to violate the provisions of the FDCPA." Complaint at ¶ 93. The Complaint alleges that Defendants McCabe, DBNTC, and BOA violated the FDCPA and, therefore the FCEUA, by attempting to collect amounts in excess of what Plaintiffs actually owed. *Id.* at ¶¶ 110-13, 116. With respect to these violations, the Complaint seeks treble damages and attorney's fees.

30.     Finally, in County VII, the Complaint alleges that Defendants assessed and collected excessive and unauthorized attorney's fees, and costs in breach of the Plaintiffs' mortgages. Complaint at ¶¶ 98-106.

31.     For these alleged breaches of contract, the Plaintiffs seek damages including repayment of "improper attorney's fees and legal expenses" and "legal costs incurred as result of foreclosure proceedings" *Id.* at ¶ 106. The Complaint also seeks an accounting, injunctive, and declaratory relief.

## CLASS ALLEGATIONS

32.     The Complaint purports to be brought on behalf of a putative class consisting "of all former or current homeowners ('Homeowners') who obtained financing secured by a first mortgage on property located within the Commonwealth of Pennsylvania, where Defendant McCabe caused a foreclosure complaint to be filed . . . and/or where Defendant Deutsche filed a foreclosure complaint or pursued a foreclosure that was filed by its predecessor . . . within six (6) years of the filing of this complaint." Complaint at ¶ 48. "Furthermore, this class includes but is

7

not limited to Homeowners whose mortgages were serviced by OneWest or BAC at the time the foreclosure complaint was filed." *Id.*

33. The putative class is alleged to consist of "over 5,000" persons. Complaint at ¶ 49. According to the Complaint, "[w]hen aggregated . . . individual damages are sufficiently large to justify this class action." *Id.*

### FEDERAL QUESTION JURISDICTION

34. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

35. Federal question jurisdiction exists under 28 U.S.C. § 1331 because certain of Plaintiffs' claims raise questions of federal law. Specifically, Count IV of the Complaint is brought under the FDCPA. Complaint at ¶ 85. Moreover, Plaintiffs' FCEUA claim is expressly predicated upon alleged violations of the FDCPA. *Id.* at ¶¶ 93-94, 97.

36. The FDCPA is federal statute and therefore Count IV raises a federal claim. *See, e.g., Armbruster v. Hecker*, Civ. No. 3:06-cv-1149, 2010 U.S. Dist. LEXIS 39647, at *3 (M.D. Pa. Apr. 22, 2010) ("Because this case arises under the FDCPA, 15 U.S.C. § 1692 *et seq.*, it presents a federal question under 28 U.S.C. § 1331 and gives the court removal jurisdiction pursuant to 28 U.S.C. § 1441(b).").

37. With respect to Plaintiffs' FCEUA claim, the foregoing allegations demonstrate that determination of that claim necessarily turns on the question of whether certain Defendants violated the FDCPA as alleged in the Complaint. *See* Complaint at ¶¶ 37, 85-94. Thus, the Complaint, on its face, raises questions of federal law that give rise to removal jurisdiction. *See, e.g., U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 389 (3d Cir. 2002) ("The state suit need not invoke a federal law in order to 'arise under' it for removal purposes. It is sufficient that the merits of the litigation turn on a substantial federal issue that is 'an element, and an essential one, of the plaintiff's cause of action.'"); *Menoken v. McNamara*, 213 F.R.D. 193, 194 (D.N.J. 2003)

("plaintiff's complaint, while containing state claims, actually presented a federal question because federal law supplied a 'necessary element' for plaintiff's recovery"); *D'Alessio v. New York Stock Exch., Inc.*, 258 F.3d 93, 101-02 (2d Cir. 2001) (removal proper, since gravamen of state law claims was alleged violation of federal securities laws); *In re Currency Conversion Fee Antitrust Litig.*, No. 1409, 21-95, 2003 WL 22097502 at *3 (S.D.N.Y. Sept. 10, 2003) (removal proper, since "the state law claims require the Court to interpret and apply federal law"); *Gandy v. The Peoples Bank & Trust Co.*, 224 B.R. 340, 344 (S.D. Miss. 1998) ("Defendants' removal of this case was proper because to vindicate plaintiff's putative state law claims, this court must necessarily construe the TILA"); *Sable v. Gen. Motors Corp.*, 90 F.3d 171, 174-75 (6th Cir. 1996) (federal jurisdiction existed because state law tort claim was premised on defendants' breach of a duty created under federal law).

38. This Court may exercise supplemental jurisdiction under 28 U.S.C. § 1367 with respect to any of the Plaintiffs claims that do not arise under federal law.

39. This Court also has federal question jurisdiction pursuant to the Home Owner's Loan Act, 12 U.S.C. § 1461, *et seq.* ("HOLA") and the doctrine of complete federal preemption.

40. OneWest is a federal savings bank chartered under 12 U.S.C. § 1464, *et seq.* As a federal savings bank, OneWest is exclusively regulated by the federal government pursuant to the HOLA and the regulations implementing HOLA, specifically 12 C.F.R. §§ 560.2, *et seq.*

41. Through HOLA, Congress gave the Office of Thrift Supervision ("OTS") and now the Office of the Comptroller of the Currency broad authority to regulate and supervise federal savings banks chartered by the OTS. *See* 12 U.S.C. § 1464. Through HOLA, Congress sought to create "a nationwide system of federal savings and loan associations to be centrally regulated

according to nationwide 'best practices.'" *Fid. Fed. Savings & Loan Ass'n. v. de la Cuesta*, 458 U.S. 141, 160-61 (1982).

42.  Pursuant to its powers under HOLA, the OTS has asserted field preemption. 12 C.F.R. § 560.2(a). Section 560.2 provides, in relevant part:

> To enhance the safety and soundness and to enable federal savings associations to conduct their operations in accordance with best practices (by efficiently delivering lo-cost credit to the public free from undue regulatory duplication and burden), OTS hereby occupies the entire field of lending regulation for federal savings associations. OTS intends to give flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation. Accordingly, federal savings associations may extend credit as authorized under federal law, including this part, without regard to state laws purporting to regulate or otherwise affect their credit activities, except to the extent provided in paragraph (c) of this section.

12 C.F.R. § 560.2(a). This preemption impacts all state law claims related to "terms of credit," "loan-related fees," "disclosure," "processing," "origination." "servicing," and the "sale or purchase of, investment or participation, in mortgages." 12 C.F.R. § 560.2(b).

43.  HOLA and its implementing regulations completely preempt all state claims related to "loan-related fees," "terms of credit," "disclosure," "processing," and "origination." *Yousif v. Ocwen Mortg. Co. LLC*, 816 F. Supp. 2d 463, 468 (E.D. Mich. 2010) (finding complete preemption).

44.  Plaintiffs allege that Defendants improperly initiated foreclosure proceedings without providing the required Pre-Foreclosure Notices and by collecting excessive and improper foreclosure-related attorney's fees. Such alleged violations are completely preempted by HOLA as they fall squarely within the scope of HOLA's preemption provision which precludes state law claims regarding the same.

10

45.     Because HOLA completely preempts Plaintiffs' claims, the doctrine of complete preemption operates as an exception to the well-pleaded complaint rule and grants this Court subject matter jurisdiction over this matter. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207 (2004); *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003).

## CLASS ACTION FAIRNESS ACT

46.     Pursuant to 28 U.S.C. § 1332, as amended by CAFA, a putative "class action" commenced after the effective date of CAFA may be removed to the appropriate United States District Court if (a) any member of the putative class is a citizen of a state different from any defendant, and (b) the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs. 28 U.S.C. § 1332(d)(2)(A).

47.     CAFA is applicable to this action because it, and more specifically, the Complaint, was commenced after the effective date of the Act. Notes to 28 U.S.C. §§ 1332 & 1453 ("The amendments made by this Act shall apply to any civil action commenced on or after the date of enactment of this Act," — *i.e.*, February 18, 2005), citing Pub. L. 109-2, § 9, 119 Stat. 14.

48.     The Complaint is a "class action" within the meaning of CAFA because Plaintiffs seek certification of a putative class pursuant to Pennsylvania Rule of Civil Procedure 1701, Pennsylvania's analog to Fed. R. Civ. P. 23 and a "rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. §§ 1332(d)(1)(B), 1453(a).

49.     <u>Citizenship of Parties</u>. The requisite diversity of citizenship exists under 28 U.S.C. §§ 1332(d)(2) and (d)(7). OneWest is a citizen of California for purposes of 28 U.S.C. § 1332. By contrast, Plaintiffs are citizens of Pennsylvania who seek to represent a class consisting homeowners who obtained residential financing in Pennsylvania. Complaint at ¶¶ 2-3, 48. Thus, OneWest is a citizen of a state different from at least one class member.

50. Regardless of any other Defendant's citizenship, removal is proper under CAFA because there need only be "minimal" diversity, *i.e.*, if *any* class member is a citizen of a different state than *any* defendant, then sufficient diversity exists for removal under CAFA. 28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B). As demonstrated above, because Plaintiffs are citizens of Pennsylvania and Defendant OneWest is a citizen of California, the "minimal" diversity required by CAFA is satisfied.

51. Amount in Controversy. There is more than $5 million in controversy in this action. Under 28 U.S.C. § 1332(d), as added by CAFA, the amount in controversy in a putative class action is determined by aggregating the amount at issue in the claims of all members of the putative class. 28 U.S.C. § 1332(d)(6). While OneWest denies that Plaintiffs or any putative class member are entitled to recover in any amount, and specifically denies that Plaintiffs or any putative class member is entitled to the relief in the various forms and amounts sought, the Complaint's allegation of a putative class and the relief sought place an aggregate amount in controversy of more than $5,000,000.00, exclusive of interest and costs.

52. Plaintiffs seeks to certify a class consisting of "over 5,000" persons who "who obtained financing secured by a first mortgage on property located within the Commonwealth of Pennsylvania, where Defendant McCabe caused a foreclosure complaint to be filed . . . and/or where Defendant Deutsche filed a foreclosure complaint or pursued a foreclosure that was filed by its predecessor . . . within six (6) years of the filing of this complaint. Furthermore, this class includes but is not limited to Homeowners whose mortgages were serviced by OneWest or BOA at the time the foreclosure complaint was filed." Complaint at ¶¶ 48-49.

53. Plaintiffs' alleged damages consist of, among other things, unauthorized and excessive foreclosure-related attorney's fees, statutory treble damages, their attorney's fees in prosecuting this action, and costs.

54. The aggregate amount in controversy is met. Based on OneWest's investigation, more than $5,000,000 is in controversy in this case. OneWest evaluated the number of putative class members and the dollar amount of their attorneys' fees based on a putative class as alleged by Plaintiffs.

55. Based on OneWest's investigation, the putative class as to OneWest consists of more than 2,600 members.

56. During the alleged class period, attorneys' fees in excess of $3 million accrued with respect to OneWest serviced loans in foreclosure in Pennsylvania. When considered in conjunction with Plaintiffs' request for treble damages and attorneys' fees, the $5 million amount in controversy requirement is satisfied by OneWest alone.

57. With respect to all of the defendants, the Complaint alleges a class in excess of 5,000 persons. The foreclosure complaint filed against Jones sought over $4,000 in attorneys' fees. Complaint Exhibit L. The foreclosure complaint filed against Salvati sought over $1,400 in attorneys' fees. Complaint Exhibit H. If each class member paid attorneys' fees totaling even $1,000, the $5 million amount in controversy requirement is easily satisfied even without considering Plaintiffs' additional elements of damages.

## PROCEDURAL REQUIREMENTS AND LOCAL RULES

58. <u>Removal to Proper Court</u>. This Court is part of the "district and division" embracing the place where this action was filed – Allegheny County, Pennsylvania. 28 U.S.C. § 1446(a).

59. <u>Removal is Timely</u>. Plaintiffs served the Complaint on OneWest on June 12, 2012. This Notice of Removal is being filed with the United States District Court for the Western District of Pennsylvania on July 11, 2012, within 30 days after service of the Complaint.

60. <u>Pleadings and Process</u>. Attached hereto as Exhibit "A" is a copy of all process, pleadings and orders served upon OneWest in the state court action. See 28 U.S.C. § 1446(a).

61. <u>Notice</u>. Attached hereto as Exhibit "B" is a copy of a Notice of Filing of Notice of Removal, which will be promptly served upon Plaintiffs' counsel and filed with the Clerk of the Court of Common Pleas, Allegheny County, Pennsylvania. See 28 U.S.C. §§ 1446(a), (d).

62. <u>Signature</u>. This Notice of Removal is signed pursuant to Fed. R. Civ. P. 11. *See* 28 U.S.C. § 1446(a).

63. <u>Bond and Verification</u>. Pursuant to Section 1016 of the Judicial Improvements and Access to Justice Act of 1988, no bond is required in connection with this Notice of Removal. Pursuant to Section 1016 of the Act, this Notice need not be verified.

64. Based upon the foregoing, this Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 as amended by CAFA, and the claims may be removed to this Court under 28 U.S.C. § 1453. This Court also has jurisdiction under 28 U.S.C. § 1331, and this matter may be removed to this Court under 28 U.S.C. § 1441.

65. Defendants DBNTC, BOA, and McCabe consent to this removal, as evidenced by the consents attached hereto as Exhibit "C". McCabe has not yet received service of original process and its defenses are preserved.

WHEREFORE, Defendant OneWest Bank, F.S.B prays that this action be removed from the Court of Common Pleas of Allegheny County to the United States District Court for the Western District of Pennsylvania.

BALLARD SPAHR LLP

Dated: July 11, 2012          By:    /s/ Martin C. Bryce, Jr.
                                     Martin C. Bryce, Jr., Esquire
                                     Pa. ID: 59409
                                     Nicholas H. Pennington, Esquire
                                     Pa. ID: 307073
                                     1735 Market Street, 51st Floor
                                     Philadelphia, PA  19103-7599
                                     Telephone:  (215) 864-8238
                                     Facsimile:  (215) 864-9511
                                     Email: bryce@ballardspahr.com
                                     Email:  PenningtonN@ballardspahr.com

## CERTIFICATE OF SERVICE

I, Martin C. Bryce, Jr., Esquire, certify that on July 11, 2012, I caused a true and correct copy of the foregoing Notice of Removal to be served in accordance with the instructions as directed by the notice of electronic filing, on the following:

>Michael P. Malakoff, Esquire
>437 Grant Street
>Suite 200, The Frick Building
>Pittsburgh, PA 15219
>
>Bernard J. Garbutt III
>Morgan, Lewis & Bockius LLP
>101 Park Avenue
>New York, NY 10178
>
>K. Isaac deVyver, Esquire
>Reed Smith LLP
>225 Fifth Avenue
>Pittsburgh, PA 15222
>
>Jeffrey B. McCarron
>Swartz Campbell LLC
>50 S. 16th Street, 28th Floor
>Philadelphia, PA 19102

BALLARD SPAHR LLP

By: s/ Martin C. Bryce, Jr.
     Martin C. Bryce, Jr., Esquire