IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GENE W. SALVATI, individually and on behalf of other similarly situated former and current homeowners in Pennsylvania, Plaintiffs, | ) ) ) ) |
| | ) Civil Action No. 12-971 |
| vs. | ) Judge Arthur J. Schwab |
| | ) Magistrate Judge Maureen P. Kelly |
| Behalf of other similarly situated former And current homeowners in Pennsylvania; DEUTSCHE BANK NATIONAL TRUST COMPANY, N.A. a subsidiary of Deutsche Bank, AG; BANK OF AMERICA HOME LOANS SERVICING a subsidiary of Bank of America, N.A.; ONEWEST BANK, F.S.B.; McCABE, WEISBERG & CONWAY, P.C., a law Firm and debt collector, Defendants. | ) ) ) ) ) ) Re: ECF Nos. 10, 12, 14 ) ) ) ) ) |

## REPORT AND RECOMMENDATION

## I.     RECOMMENDATION

This purported class action case stems from foreclosure proceedings allegedly initiated

by, and/or on behalf of, Defendants Deutsche Bank National Trust Company, N.A. ("Deutsche"),

Bank of America Home Loans Servicing ("BOA"), OneWest Bank, F.S.B. ("OneWest") and

McCabe, Weisberg & Conway, P.C. ("McCabe") (collectively, "Defendants"), after Plaintiff

Gene W. Salvati ("Mr. Salvati") defaulted on his home mortgage loan.[1]  Mr. Salvati's claims

largely revolve around the validity of the Pre-Forclosure Notice ("the Notice") sent to him and

the Foreclosure Complaint filed against him as well as the demand for attorneys' fees and other

legal expenses contained in the Foreclosure Complaint.

---

[1] Olivia Jones was also a named Plaintiff at the commencement of this action.  Ms. Jones, however, passed away on June 22, 2012, and the claims brought on her behalf were subsequently dismissed pursuant to Fed. R. Civ. P. 41(a). See ECF No. 28; 10/9/2012 Text Order.

Defendants BOA, Deutsche and McCabe have each filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) which are presently before the Court.  ECF Nos. 10, 12, 14.  For the reasons that follow, it is respectfully recommended that all three motions be granted in part and denied in part.

## II.    REPORT

### A.    FACTUAL AND PROCEDURAL BACKGROUND

According to the Complaint, Mr. Salvati refinanced his home on May 8, 2006, by entering into two separate real estate transactions with New Century Mortgage Corporation ("New Century"), a non-defendant.  ECF No. 1-1, p. 5, ¶ 8.  One of the loans taken out by Mr. Salvati was for $139,200.00, and the second loan was for $34,800.00.  Id.  New Century purportedly assigned Mr. Salvati's second mortgage to Household Realty Corporation on May 15, 2006, but retained ownership of the primary mortgage ("the Mortgage"), which is at issue in this case.  Id. at pp. 5-6, ¶ 9.

Mr. Salvati has alleged that New Century filed for bankruptcy on April 2, 2007, and that, even though there apparently "is no known assignment [of the Mortgage] on file at the Recorder of Deeds," Mr. Salvati subsequently began receiving mortgage loan account statements from Countrywide Financial Corporation ("Countrywide").  Id. at p. 6, ¶ 10.  It also appears that Defendant BOA subsequently purchased Countrywide sometime in 2008 and continues to service Mr. Salvati's loan.  Id. at p. 6, ¶ 12.  On September 13, 2011, however, over four years after New Century filed for bankruptcy, it purportedly assigned the Mortgage to Deutsche.  Id. at p. 6, ¶ 11; pp. 68-70.  The Assignment of Mortgage was executed on behalf of New Century by Assistant Vice President Kimmie T. Pangilinan, "Bank of America N.A., Attorney In Fact."  Id.

Although not clear from the face of the Complaint, at some point Mr. Salvati defaulted on the Mortgage. Mr. Salvati was subsequently sent a notice, dated May 17, 2011, from Defendant McCabe indicating the lender's intention to accelerate the maturity of his Mortgage obligation ("the Notice"), as is required by law. Id. at p. 6, ¶ 13. Mr. Salvati contends that the Notice was legally defective in a number of respects, including the fact that it was sent by McCabe and not the by the mortgagee and that it failed to inform Mr. Salvati that he may have the right to refinance his loan or that the purpose of meeting with a consumer credit counseling agency was to attempt to resolve the delinquency or default by restructuring the loan payment schedule or otherwise. Id. at p. 6, ¶ 13; p. 7, ¶ 15. Moreover, the Notice lists Defendant Deutsche as the lender even though the Mortgage was not "purportedly assigned to Deutsche" until September 13, 2011, almost four months after the date of the Notice. Id. at pp. 6, ¶ 14.

Mr. Salvati also contends that on February 22, 2012, McCabe submitted a Mortgage Foreclosure Complaint ("Foreclosure Complaint") against him on behalf of Deutsche in Beaver County, Pennsylvania, in which amounts totaling $206,611.64 for principal, interest, attorney's fees, late charges, corporate advances, and escrow advances were listed as due and owing. Id. at p. 7, ¶ 16; p. 84. Mr. Salvati complains that the Foreclosure Complaint ran afoul of certain legal requirements in that it failed to indicate on what date the amounts listed were due and owing; that the demand for attorneys' fees were not itemized and were not alleged to be based on actual work performed or costs incurred by McCabe; that the amounts for corporate and escrow advances were not itemized; and that no supporting documents were attached to the Foreclosure Complaint. Id. at p. 7, ¶¶ 17, 18; p. 8, ¶ 19. Mr. Salvati further complains that his current account balance continues to be overstated in that it "reflects paid and unpaid foreclosure related attorneys' fees and legal expense allegedly incurred and un-incurred by the Defendants," and that

the unauthorized fees, including those "added to the Homeowner's unpaid principal balances before they were due and owing . . . resulted in Homeowners paying excess and illegal charges on inflated unpaid principal balances . . . ." Id. at p. 10, ¶ 33; p. 13, ¶ 46.

Accordingly, on June 8, 2012, Mr. Salvati filed this putative Verified Class Action Complaint ("the Complaint") individually and on behalf of other similarly situated former and current homeowners in Pennsylvania, in the Court of Common Pleas of Allegheny County, Pennsylvania ("Homeowners"). On July 11, 2012, Defendant OneWest, with the consent of the other three Defendants, timely removed the case to this Court. ECF No. 1. In the Complaint, Mr. Salvati has brought claims against Deutsche, BOA, One West and McCabe under the Pennsylvania Loan Interest and Protection Law ("Act 6"), 41 Pa. Stat. Ann. §§ 101, *et seq.* (Count I); Act 6 and/or the Housing Finance Agency Law ("Act 91"), 35 Pa. Stat. Ann. § 1680.401c, *et seq.* (Count II); and the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. Stat. Ann. § 201-1, *et seq*. (Count III). Mr. Salvati has also brought claims under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, *et seq*. (Count IV), and the Pennsylvania Fair Credit Extension Uniformity Act ("FCEUA"), 73 Pa. Stat. Ann. § 2270.1, *et seq.*, as applied to debt collectors (Count V), against McCabe, and claims under the FCEUA, as applied to creditors, against Deutsche and BOA (Count VI). Finally, Mr. Salvati has brought breach of contract claims against Deutsche and OneWest (Count VII).

Defendants BOA, Deutsche and McCabe have each filed a Motion to Dismiss the Complaint. ECF No. 10, 12, 14. Mr. Salvati has responded in kind, ECF Nos. 31, 32, 33, and Defendants have each filed reply briefs, ECF Nos. 43, 44, 45. Accordingly, all three motions are now ripe for review.

## B.     STANDARD OF REVIEW

In assessing the sufficiency of the complaint pursuant to a motion to dismiss filed under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all material allegations in the complaint and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff.  Odd v. Malone, 538 F.3d 202, 205 (3d Cir. 2008).  The Court, however, need not accept bald assertions or inferences drawn by the plaintiff if they are unsupported by the facts set forth in the complaint.  See California Public Employees' Retirement System v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004), *citing* Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).  Nor must the Court accept legal conclusions set forth as factual allegations. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Id., *citing* Papasan v. Allain, 478 U.S. 265, 286 (1986).   Indeed, the United States Supreme Court has held that a complaint is properly dismissed under Fed. R. Civ. P. 12(b)(6) where it does not allege "enough facts to state a claim to relief that is plausible on its face," id. at 570, or where the factual content does not allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  See Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (finding that, under Twombly, "labels, conclusions, and a formulaic recitation of the elements of a cause of action" do not suffice but, rather, the complaint "must allege facts suggestive of [the proscribed] conduct" and that are sufficient "to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s] of his claim").

## C.    DISCUSSION

### 1.    Defendant BOA's Motion to Dismiss

Mr. Salvati has brought claims against BOA in four of the seven counts set forth in the Complaint  (Counts I, II, III, and VI).  In Count I Mr. Salvati alleges that BOA (as well as the other Defendants) violated Section 406 of Act 6, which imposes certain restrictions on attorneys' fees that a "residential mortgage lender" may contract for or receive.  ECF No. 1-1, pp. 19-22, ¶¶ 61-74.  In Count II, Mr. Salvati alleges that BOA (as well as the other Defendants) violated the notice requirements of Act 6 and Act 91.  Id. at pp. 22-23, ¶¶ 75-78.  In Count III, Mr. Salvati alleges that BOA (as well as the other Defendants) violated the UTPCPL by overcharging and/or misrepresenting the amount owed by the Homeowners who purport to make up the class on behalf of which Mr. Salvati has brought this action.  Id. at pp. 24-25, ¶¶ 79-83.  Finally, in Count VI, Mr. Salvati alleges that BOA (as well as Defendant Deutsche) violated the FCEUA by attempting to collect attorneys' fees that were unlawful under Act 6 and/or Act 91.  Id. at pp. 27-8, ¶¶ 95-97.  BOA contends that all four claims should be dismissed as the Complaint fails to allege sufficient facts to state a claim for relief that is plausible.

### a.    Act 6 Claim (Count I)

Mr. Salvati has alleged at Count I of the Complaint that BOA charged and/or collected unauthorized attorneys' fees and legal expenses in violation of Section 406 of Act 6 and seeks to recover those fees under Section 501 and 502 of the Act.  Specifically, Mr. Salvati alleges that BOA charged and/or collected fees that were not actually incurred and were in excess of that permissible before the 33-day right to cure had expired.  Mr. Salvati also alleges that the attorneys' fees were flat or percentage fee based rather than hourly based and that none of the

fees and expenses complained of were authorized by the Homeowners' notes and or mortgages thereby violating Act 6.  ECF 1-1, pp. 19-22, ¶¶ 61-64.

BOA initially argues that Mr. Salvati has failed to state a claim under Section 406 because it is not a residential mortgage lender.

Section 406 provides that:

> no residential mortgage lender shall contract for or receive attorney's fees from a residential mortgage debtor except as follows:
>
> (1) Reasonable fees for services included in actual settlement costs.
>
> (2) Upon commencement of foreclosure or other legal action with respect to a residential mortgage, attorney's fees which are reasonable and actually incurred by the residential mortgage lender may be charged to the residential mortgage debtor.
>
> (3) Prior to commencement of foreclosure or other legal action attorneys' fees which are reasonable and actually incurred not in excess of fifty dollars ($50) provided that no attorneys' fees may be charged for legal expenses incurred prior to or during the thirty-day notice period provided in section 403 of this act.

41 Pa. Stat. Ann. § 406.  A "residential mortgage lender" is defined as "any person who lends money or extends or grants credit and obtains a residential mortgage to assure payment of the debt.  The term shall also include the holder at any time of a residential mortgage obligation."  41 Pa. Stat. Ann. § 101.

BOA correctly points out that Mr. Salvati has not alleged any facts to support a finding that BOA lent money or extended credit to him, that BOA obtained or held his loan, or that it could otherwise be considered a residential mortgage lender.  Indeed, not only has Mr. Salvati alleged elsewhere in the Complaint that BOA merely services his loan, ECF No. 1-1, p. 5, ¶5; p. 6, ¶ 12, but he has not addressed BOA's argument in this regard in his brief in opposition to BOA's Motion.  Mr. Salvati, therefore, appears to have conceded the issue and BOA's Motion to

Dismiss with respect to Mr. Salvati's Section 406 claim brought in Count I of the Complaint is properly granted.

BOA also contends that Mr. Salvati's claim brought pursuant to Section 502 of Act 6 should be dismissed because it is predicated on BOA's alleged violation of Section 406 which, as just discussed, does not apply to BOA because it is not a residential mortgage lender. Mr. Salvati, however, contends that Section 502 does not just apply to residential mortgage lenders but sweeps more broadly encompassing entities such as BOA.

Section 502 provides:

> A person who has paid ... charges prohibited or in excess of those allowed by this act or otherwise by law may recover triple the amount of such excess ... charges in a suit of law against the *person* who has collected such excess ... charges: Provided, That no action to recover such excess shall be sustained in any court of this Commonwealth unless the same shall have been commenced within four years from and after the time of such payment. Recovery of triple the amount of such excess interest or charges, but not the actual amount of such excess interest or charges, shall be limited to a four-year period of the contract.

41 Pa. Stat. Ann. § 502 (emphasis added). Act 6 defines the term "person" broadly as "an individual, corporation, business trust, estate trust, partnership or association or any other legal entity, and shall include but not be limited to residential mortgage lenders." 41 Pa. Stat. Ann. § 101.

It therefore appears clear that the legislature broadened the scope of entities potentially liable for treble damages beyond residential mortgage lenders so as to include individuals, corporations, business trusts, estate trusts, partnerships and associations or any other legal entities. Because BOA does not dispute that it falls within this definition of "persons" it appears that it is subject to Section 502's prohibitions. See Trunzo v. Citi Mortgage, 876 F. Supp. 2d 521, 541 (W.D. Pa. 2012); Glover v. Udren, No. 08-990, 2010 WL 5829248, at *7-8 (W.D. Pa.

Oct. 10, 2010), *Report and Recommendation adopted by* 2011 WL 666176 (W.D. Pa. Feb. 14, 2011).  Indeed, under BOA's interpretation of Act 6, limiting recovery under Section 502 to suits against residential mortgage holders would render meaningless the language allowing recovery from individuals, corporations, business trusts, estate trusts, partnerships and associations and other legal entities.

BOA nevertheless argues that, even if Section 502 applies, absent a violation of Section 406 Mr. Salvati's allegations still fall short of stating a claim against it because Section 502 only allows a plaintiff who has *actually paid* improper charges to recover against the person or entity that has *actually collected* those charges.  41 Pa. Stat. Ann. § 502.  See Trunzo v. Citi Mortgage, 876 F. Supp. 2d at 541.  Because Mr. Salvati has failed to allege any facts in the Complaint to suggest that he actually paid illegal fees or that those fees were collected by BOA, BOA argues that Mr. Salvati has not shown a right to recovery under Section 502.

Review of the Complaint, however, shows that Mr. Salvati has alleged that he paid "at least a portion of the illegal charges" charged to his account, ECF No. 1-1, p. 10, ¶¶ 33; that he "paid some or all of these unauthorized charges, id. at p. 22, ¶ 74; and that Defendants "charged and/or collected" unreasonable attorneys' fees and illegal expenses.  Id. at pp. 20-21, ¶¶ 68, 71, 72.  Mr. Salvati has also alleged, and BOA does not dispute, that it services Mr. Salvati's loan and has done so since 2008.  Id. at p. 5, ¶ 5; p. 6, ¶ 12.  Moreover, the record shows that the Notice sent to Mr. Salvati regarding his delinquency was sent by McCabe "for [BOA] F/K/A Countrywide Home Loans Servicing, L.P.," and that BOA verified the allegations brought in the Foreclosure Complaint including that Mr. Salvati owed the alleged illegal fees at issue.  ECF No. 1-1, pp. 77, 85.  Under these circumstances, it cannot be said, at least not at this juncture, that BOA is divorced from the foreclosure proceedings or that any of the alleged illegal fees paid by

Mr. Salvati did not inure to BOA's benefit. As such, Mr. Salvati has stated a claim under Section 502 of Act 6 and BOA's Motion in this regard is properly denied.[2]

### b. Act 6/Act 91 Claims (Count II)

At Count II of the Complaint, Mr. Salvati alleges that the Notice sent to him ran afoul of Act 6 and Act 91 in that it failed to include mandatory language informing him that he had the right to refinance his loan or that the purpose of the face-to-face meeting with a consumer credit counseling agency was to attempt to resolve the delinquency, and because it suggested that he could meet with the mortgagee rather than a consumer credit counseling agency. Mr. Salvati also complains that the Notice was not sent by the mortgagee. ECF No. 1-1, p. 23, ¶78. Because a prerequisite to filing a foreclosure complaint is providing proper notice, Mr. Salvati contends that the Foreclosure Complaint filed against him is also defective entitling him to damages under Section 502 of Act 6.[3]

BOA argues that Count II should be dismissed because there is no private right of action under Act 91 and Mr. Salvati cannot use Section 502 as a vehicle for redressing an Act 91 violation since it merely provides notice requirements pertaining to foreclosure proceedings and does not revolve around any prohibited charges.

Mr. Salvati concedes that there is no private right of action under Act 91, but contends that Section 502 nevertheless provides a remedy for violations of Act 91 in addition to violations of Act 6.

_____

[2] To the extent that Mr. Salvati seeks recovery under Section 501 of Act 6, that claim is properly dismissed. As argued by BOA, and Mr. Salvati does not dispute, Section 501 prohibits charging excessive interest rates which has not been alleged in this case.

[3] Although Mr. Salvati also seeks recovery under Section 501 in Count II, his claim is this regard is properly dismissed for the same reasons discussed with respect to Count I. See Footnote No. 2, *supra*.

As previously discussed, Section 502 provides:

> A person who has paid ... charges prohibited or in excess of those allowed by this act *or otherwise by law* may recover triple the amount of such excess ... charges in a suit of law against the *person* who has collected such excess ... charges . . . .

41 Pa. Stat. Ann. § 502 (emphasis added).

Here, although not a model of clarity, reading the Complaint as a whole, Mr. Salvati has alleged that the Notice requirements of Acts 6 and 91, as set forth above, are a prerequisite to filing a foreclosure action; that BOA failed to comply with those requirements; that, consequently, the foreclosure action filed against him was also improper and/or defective and resulted in illegal attorneys' fees and costs being added to the mortgage principal balance. ECF No.1-1, p. 7, ¶¶ 17, 18; p. 8, ¶ 19; p. 10, ¶¶ 31-34; p. 11, ¶¶ 35-37; pp. 11-13, ¶¶ 39-46; p. 22, ¶¶ 77, 78. Mr. Salvati has also alleged that the addition of these fees, in turn, increased the amount of the encumbrance on his property. Having allegedly that he paid at least some of those increased costs, Mr. Salvati contends that he is entitled to relief under Section 502. Id. at p. 10, ¶ 33; p. 22, ¶ 74.

Thus, although the notice requirements set forth in Acts 6 and 91 do not speak to prohibited charges, Mr. Salvati, in essence, has alleged that he has paid prohibited charges as a direct result of BOA's failure to comply with the requisite notice requirements set forth in those statutes. As found in relation to Mr. Salvati's claim brought at Count I, it cannot be said that no benefit inured to BOA as the servicer of the loan as a result of the alleged illegal fees Mr. Salvati claims to have paid, and which would not have been incurred absent the deficient Notice. It therefore appears that Mr. Salvati has sufficiently alleged that he paid charges prohibited or in excess of those allowed by Act 6 or "otherwise by law" -- which would appear to include Act 91

-- and that BOA arguably "collected" those charges. As such, he has properly stated a claim at Count II of the Complaint and BOA's Motion in this regard should be denied.

### c.   UTPCPL Claim (Count III)

Mr. Salvati claims in Count III of the Complaint that BOA violated Sections 201-2(4)(v) and 201-2(4)(xxi) of the UTPCPL by "overcharging and/or misrepresenting the amount that [he] owed." ECF No. 1-1, p. 24, ¶ 81. BOA argues that these claims should be dismissed because Mr. Salvati has failed to allege that BOA engaged in a fraudulent or deceptive act or that Mr. Salvati justifiably relied on any such act.

The UTPCPL is Pennsylvania's consumer protection law which was enacted to prevent "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Trunzo v. Citi Mortgage, 876 F. Supp. 2d at 541, *quoting* Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC, 40 A.3d 145, 151 (Pa. Super. 2012). See 73 Pa. Stat. Ann. § 201–3. The UTPCPL is to be liberally construed so as to promote the legislative goal of protecting consumers. Id., *citing* Bennett, 40 A.3d at 151.

In order to maintain a private right of action under the UTPCPL, a plaintiff must show that he 1) purchased or leased goods or services primarily for a personal, family, or household purpose; 2) suffered an ascertainable loss of money or property; and 3) the loss occurred as a result of the use or employment by a person of a method, act, or practice declared unlawful by the UTPCPL. Baynes v. George E. Mason Funeral Home, Inc., No. 09-153J, 2011 WL 2181469, at *4 (W.D. Pa. June 2, 2011). See 73 Pa. Stat. Ann. § 201–9.2(a). The plaintiff must offer evidence of one of the statutorily delineated "unfair methods of competition" found at 73 Pa. Stat. Ann. § 201–2(4), or evidence which fits the "catch-all provision" found at 73 Pa. Stat. Ann. § 201–2(4)(xxi). Id.

Section 201–2(4)(v) of the UTPCPL prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have." As recently found by this Court in <u>Trunzo v. Citi Mortgage</u>, this section applies to cases in which a defendant misrepresents the characteristics of a product such as suits involving false advertising. <u>Trunzo v. Citi Mortgage</u>, 876 F. Supp. 2d at 542, *citing* <u>Haggart v. Endogastric Solutions, Inc.</u>, No. 10–0346, 2011 WL 466684, at *6 (W.D. Pa. Feb. 4, 2011) (noting that Pennsylvania law requires a plaintiff to allege, among other things, that the challenged advertisement is false for liability under Section 201–2(4)(v) to attach); <u>Glover v. Udren</u>, 2010 WL 5829248, at *9 (dismissing claim against a mortgage servicer, because the servicer did not make any deceptive representations regarding the "characteristics, uses, or benefits" of a loan modification agreement); <u>Meyer v. Cmty. Coll. of Beaver Cnty.</u>, 2 A.3d 499, 505 (Pa. 2010) (noting that Sections 201–2(4)(v) through (vii) relate to claims of nonconforming goods or services). Mr. Salvati, however, has not alleged that BOA misrepresented the characteristics or benefits of the Mortgage or the Note themselves but has alleged only that he paid improper fees relative to the subsequent foreclosure proceedings. As such, Mr. Salvati has failed to state a claim under Section 201–2(4)(v) of the UTPCPL and that claim should be dismissed. <u>See Trunzo v. Citi Mortgage</u>, 876 F. Supp. 2d at 542.

Section 201–2(4)(xxi) of the UTPCPL, upon which Mr. Salvati also relies, prohibits "any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." BOA contends that Mr. Salvati has failed to state claim under Section 201-2(4)(xxi) because the Complaint fails to allege that BOA made a false or deceptive

representation about his loan, that Mr. Salvati justifiably relied upon that representation, or that he suffered an ascertainable loss as a result.

Section 201–2(4)(xxi) -- the "catchall provision" of the UTPCPL -- "encompasses a wide range of circumstances." Trunzo v. Citi Mortgage, 876 F. Supp. 2d at 542. A plaintiff is nevertheless required to prove that the defendant made a misrepresentation or engaged in an act or a practice that "has the capacity or tendency to deceive." Chiles v. Ameriquest Mortg. Co., 551 F. Supp. 2d 393, 399 (E.D. Pa. 2008), *quoting* Christopher v. First Mutual Corp., No. 05-1149, 2006 WL 166566, at *4 (E.D. Pa. Jan. 20, 2006).

In the instant case, the record shows not only that the allegedly defective Notice was submitted on BOA's behalf but that BOA verified the allegations in the Foreclosure Complaint, including the representation that allegedly illegal and/or unauthorized attorneys' fees and other costs were due and owing. These alleged misrepresentations clearly have the capacity to deceive and, thus, run afoul of the UTPCPL. Moreover, having alleged that he paid at least a portion of the illegal fees, it is reasonable to infer that Mr. Salvati did so in reliance on the misrepresentation that attorneys' fees and other legal expenses were due and owing.

The remaining question therefore is whether Mr. Salvati has alleged sufficient facts to permit the inference that he suffered an ascertainable loss as a result of his reliance on the misrepresentation. To that end, Mr. Salvati has alleged that his current account balance is overstated as it reflects illegal foreclosure related legal expenses and attorneys' fees, at least part of which he has paid, and that the payment of those fees resulted in "paying excess and illegal inflated unpaid principal balances . . . ." ECF No. 1-1, p. 10 ¶ 33; p. 13, ¶ 46. These assertions appear to show that Mr. Salvati suffered a discernible loss in the form of an increased mortgage balance which increased the encumbrance on his property. Having paid a portion of those

increased costs it would appear that Mr. Salvati has suffered an ascertainable loss. Accordingly, BOA's Motion as to Count III is properly denied.[4]

<strong>d.      FCEUA Claim (Count VI)</strong>

In Count VI of the Complaint, Mr. Salvati brings a claim against BOA under the FCEUA alleging that BOA violated Section 2270.4(b)(5), which provides that "[a] creditor may not use any false, deceptive or misleading representation or means in connection with the collection of any debt." 73 Pa. Stat. Ann. § 2270.4(b)(5). BOA argues that this claim is properly dismissed because Mr. Salvati has not alleged that BOA made any representations or misrepresentations to Mr. Salvati, or that it charged him fees or collected any unlawful payments from him. BOA also argues that Mr. Salvati's failure to allege that he suffered any damages as a result of BOA's alleged conduct in violation of the FDEUA requires that the claim be dismissed.

Mr. Salvati has not specifically addressed these arguments made by BOA in his responsive brief but, rather, for reasons that are not entirely clear, engages in a six page argument as to why the demanded fees and costs at issue here do not constitute a purchase money mortgage and, therefore, fall within the definition of "debt" under the FCEUA. BOA, however, has not argued that Mr. Salvati's FCEUA claim should be dismissed because the monies at issue are not a "debt" as contemplated by the FCEUA; it seeks dismissal because Mr. Salvati has failed to plead sufficient facts which suggest that BOA used any deceptive or misleading representations or means in connection with the debt. Nevertheless, the Court has already found that Mr. Salvati has alleged sufficient facts to support the inference that BOA made deceptive or

---

[4] To the extent that BOA contends that Mr. Salvati's argument that BOA caused liens to be placed upon his property resulting from its unauthorized and/or illegal foreclosure fees is a new theory of relief under the UTPCPL set forth for the first time in his brief in opposition to BOA's motion, the Complaint is to the contrary. Although the word "lien" does not appear on the face of the Complaint, Mr. Salvati has pled he has paid illegal attorneys' fees and other costs including those that were added to his unpaid principal balance before they were due and owing and which resulted in an inflated unpaid balance and excess payments. ECF No. 1-1, pp. 10, 13, ¶¶ 33, 46. Viewing these allegations in the light most favorable to Mr. Salvati, it can be inferred that adding illegal fees to the unpaid principal served to increase the amount of the encumbrance or the lien against Mr. Salvati's property.

misleading representations when it verified the Foreclosure Complaint which included the charges for illegal attorneys' fees and other expenses and that the payments Mr. Salvati claims to have made not only constitute an ascertainable loss but that they arguably inured to BOA's benefit. Accordingly, BOA's Motion seeking dismissal of Count VI should be denied as well.

### 2. Defendant DBNTC's Motion to Dismiss

Mr. Salvati has brought claims against Deutsche in Counts I, II, III, and VI of the Complaint for violating Act 6, Act 91, the UTPCPL, and the FCEUA, and a claim for breach of contract at Count VII. Deutsche contends that Mr. Salvati not only lacks standing to assert certain of these claims but that he has otherwise failed to plead sufficient facts to withstand a motion to dismiss.

### a. Standing

Deutsche initially argues that Mr. Salvati lacks standing to assert claims against it in any capacity other than as a trustee, or to bring claims against it as a trustee for any trust other than the trust that owns and holds Mr. Salvati's loan. Mr. Salvati, however, has represented that he is not claiming that Deutsche is liable for anything other than in its capacity as a trustee of the mortgage securitization trust in which Mr. Salvati's loan resides, and that he does not purport to represent Homeowners with claims against any trust other than the trust that owns and holds Mr. Salvati's loan. ECF No. 31, p. 2. Thus, Deutsche's standing concerns do not appear to be an issue.

### b. Act 6 Claim (Count I)

In Count I of the Complaint, Mr. Salvati brings an Act 6 claim against Deutsche alleging that Deutsche, like BOA, charged and/or collected fees that were not actually incurred and were in excess of that permissible before the 33-day right to cure had expired. Mr. Salvati also

complains that the attorneys' fees charges were flat or percentage fee based, rather than hourly based, and that none of the fees and expenses complained of were authorized by the Homeowners' Note and or Mortgage thereby violating Act 6. ECF No. 1-1, pp. 20-21, ¶ 68.

Deutsche, much like BOA, argues that Mr. Salvati's Act 6 should be dismissed because Mr. Salvati has failed to adequately allege any facts showing that he actually paid any disputed fees or costs or that Deutsche actually collected any such fees or costs as is required to recover under Section 502. In response, Mr. Salvati acknowledges that a prerequisite to recovery under Act 6 is that impermissible charges were actually collected but contends that he has sufficiently alleged as much in the Complaint.

As previously discussed, Mr. Salvati has alleged in the Complaint that he paid "at least a portion of the illegal charges" charged to his account, ECF No. 1-1, p. 10, ¶ 33; that he "paid some or all of these unauthorized charges, id. at p. 22, ¶ 74; and that Defendants "charged and/or collected" these unreasonable attorneys' fees and illegal expenses. Id. at pp. 20-21, ¶¶ 68, 71, 72. Mr. Salvati has also alleged, and Deutsche does not dispute, that the Notice sent to Mr. Salvati regarding his delinquency lists Deutsche as the lender and that the Foreclosure Complaint, which lists Deutsche as the Plaintiff, was filed on behalf of Deutsch -- McCabe's client. Id. at pp. 6, 7, ¶¶ 14, 16, 18. The Foreclosure Complaint itself also indicates that McCabe is Deutsche's attorney. ECF No. 1-1, pp. 79, 80, 81, 83, 84.

Having alleged that he paid at least some portion of the illegal fees as set forth in the Foreclosure Complaint, it is reasonable to infer that they were paid to and received by Deutsche as the lender. As such, Mr. Salvati has stated a claim under Section 502 of Act 6 and Deutsche's Motion in which it argues to the contrary should be denied.

### c.     Act 6/Act 91 Claims (Count II)

Count II of the Complaint, in which Mr. Salvati alleges that the Notice and Foreclosure Complaint filed against him ran afoul of Act 6 and Act 91, has also been brought against Deutsche.  As previously discussed, Mr. Salvati specifically claims that the Notice failed to include mandatory language informing him that he had the right to refinance his loan or that the purpose of the face-to-face meeting with a consumer credit counseling agency was to attempt to resolve the delinquency, and because it suggested that he could meet with the mortgagee rather than a consumer credit counseling agency.  Mr. Salvati also complains that the Notice was not sent by the mortgagee.  ECF No. 1-1, p. 23, ¶78.  Because a prerequisite to filing a foreclosure complaint is providing proper notice, Mr. Salvati contends that the Foreclosure Complaint filed against him is also defective entitling him to damages under Section 502 of Act 6.  Deutsche argues that Count II should be dismissed because there is no private right of action under Act 91 and Mr. Salvati cannot use Section 502 as a vehicle for redressing an Act 91 violation since it merely provides notice requirements pertaining to foreclosure proceedings and does not revolve around any prohibited charges.

These arguments, however, have already been proffered by BOA and rejected by the Court.  Section 502 allows for recovery for charges paid that are prohibited by Act 6 "or otherwise by law."  41 Pa. Stat. Ann. § 502.  It therefore follows that Section 502 allows for recovery of fees paid in violation of Act 91 insofar as the violation resulted in illegal charges being paid.  Because Mr. Salvati has alleged that Deutsch's failure to comply with the requisite notice requirements precipitated the filing of the improper Foreclosure Complaint that included illegal charges -- some of which he has paid, it appears that Mr. Salvati has properly stated a claim at Count II.  Hence, Deutsche's Motion in this regard should be denied.

### d.     UTPCPL Claim (Count III)

To the extent that Mr. Salvati has brought a claim against Deutsche under Section 201–2(4)(v) of the UTPCPL, it should be dismissed for the same reasons the claim should be dismissed against BOA, *i.e.* that Mr. Salvati has not alleged that Deutsche misrepresented the characteristics or benefits of the Mortgage or the Note themselves but has alleged only that he paid improper fees relative to the subsequent foreclosure proceedings.  See Trunzo v. Citi Mortgage, 876 F. Supp. 2d at 542.

With respect to Section 201–2(4)(xxi) of the UTPCPL, however, Mr. Salvati has sufficiently alleged that Deutsche made a false or deceptive representation about his loan, that he justifiably relied upon that representation, and that he suffered an ascertainable loss as a result of the misrepresentation.  See Chiles v. Ameriquest Mortg. Co., 551 F. Supp. 2d at 399, *quoting* Christopher v. First Mutual Corp., 2006 WL 166566, at *4.

Specifically, Mr. Salvati has alleged in the Complaint that the Notice was sent by McCabe on Deutsche's behalf on May 17, 2011, which was before the loan was assigned to Deutsche in September of 2011, and that as of September, 2011, New Century was in bankruptcy and could not have assigned Mr. Salvati's loan to Deutsche in any event.  ECF No. 1-1, p. 6, ¶¶ 10, 11, 14.  It is also alleged that "Defendant, McCabe, commenced a Mortgage Foreclosure Complaint . . . on behalf of Deutsche Bank, demanding a total of $206,611.64," and that "[t]he attorney fees demanded ($1,450.00) were not itemized and were not alleged to be based on work actually performed by or costs incurred by McCabe or invoiced to the Plaintiff listed in the Foreclosure Complaint (McCabe's client)."  ECF No. 1-1, p. 7, ¶¶16, 18.  The Foreclosure Complaint itself lists Deutsche as the Plaintiff and indicates that McCabe is Deutsche's attorney. ECF No. 1-1, pp. 79, 80, 81, 83, 84.

These assertions appear sufficient to warrant the inference that the foreclosure proceedings were commenced by Deutsche through its attorney McCabe and, consequently, that the allegedly false and/or deceptive representation in the Foreclosure Complaint regarding the fees owed are attributable to Deutsche.  See <u>C.I.R. v. Banks</u>, 543 U.S. 426, 436 (2005), *citing* Restatement (Second) of Agency § 1, Comment e (1957) ("the attorney-client relationship . . . . is a quintessential principal-agent relationship"); <u>McCarthy v. Recordex Serv., Inc.</u>, 80 F.3d 842, 853 (3d Cir. 1996) ("It is, of course, beyond cavil that the attorney-client relationship is an agent-principal relationship").  See <u>Schlueter v. Varner</u>, 384 F.3d 69, 80 (3d Cir. 2004), *quoting* <u>Coleman v. Thompson</u>, 501 U.S. 722, 752-53 (1991) ("[w]e assume, for better or worse, that a lawyer is acting as the petitioner's agent, and the petitioner therefore 'bear[s] the risk of attorney error'").

In addition, Mr. Salvati has alleged that he paid some portion of the unlawful charges in reliance on Defendants' misrepresentations and overstated charges; that his current account balance continues to be overstated in that it "reflects paid and unpaid foreclosure related attorneys' fees and legal expense allegedly incurred and un-incurred by the Defendants;" and that the unauthorized fees, including those "added to the Homeowner's unpaid principal balances before they were due and owing . . . resulted in Homeowners paying excess and illegal charges on inflated unpaid principal balances . . . ."  ECF No. 1-1 at p. 10, ¶ 33; p. 13, ¶ 46; p. 24, ¶ 82.

As previously found, it can be inferred from these allegations that Mr. Salvati suffered a discernible loss in the form of an increased mortgage balance and, thus, an increased encumbrance on his property and increased payments. Because Mr. Salvati alleges that he paid at least a portion of those increased charges in reliance on the misrepresentations in the Foreclosure

Complaint he has sufficiently state a claim under Section 201–2(4)(xxi) of the UTPCPL to survive a motion to dismiss. As such, Deutsche's Motion in this regard is properly denied.

### e.  FCEUA Claim (Count VI)

Mr. Salvati also brings a claim against Deutsche under Section 2270.4(b)(5) of the FCEUA in Count VI of the Complaint. As set forth above, Section 2270.4(b)(5) provides that "[a] creditor may not use any false, deceptive or misleading representation or means in connection with the collection of any debt." 73 Pa. Stat. Ann. § 2270.4(b)(5). Deutsche argues, much as BOA has, that this claim is properly dismissed because Mr. Salvati has not alleged that Deutsche made any representations or misrepresentations to Mr. Salvati relative to the fees at issue.

Notwithstanding Mr. Salvati's unresponsive argument in his brief in opposition to Deutsche's Motion, the Court has previously found that the filing of the Foreclosure Complaint, in which fees were allegedly misrepresented, can be imputed to Deutsche. It therefore follows that Mr. Salvati has stated a claim under the FCEUA and Deutsche's Motion as to Count VI should be denied.

### f.  Contract Claim (Count VII)

Mr. Salvati purports to bring a breach of contract claim at Count VII of the Complaint against Deutsche and OneWest, which serviced Plaintiff Jones' loan. Noting that the claim appears to have been brought on behalf of Ms. Jones alone, Deutsche argued in its opening brief, which was filed on August 20, 2012, that Ms. Jones failed to state a claim against it for a number of reasons. The claims brought by Ms. Jones were subsequently dismissed from the action on October 9, 2012, leaving Mr. Salvati as the only named Plaintiff. See ECF No. 28; 10/9/2012 Text Order. In Mr. Salvati's brief in opposition to Deutsche's Motion, which was filed on

October 10, 2012, Mr. Salvati contends that the breach of contract claim was brought on behalf of Mr. Salvati as well as Ms. Jones and that because Deutsche did not seek dismissal of Mr. Salvati's breach of contract claim, it remains viable. In its reply brief, Deutsche reiterates that, despite Mr. Salvati's argument to the contrary, the breach of contract claim was only brought by Ms. Jones and that, even if Count VII could be construed as applying to Mr. Salvati, he has nevertheless failed to state a claim as the Complaint is devoid of any reference to Mr. Salvati, a specific contract provision, a breach, or resulting damages.

Indeed, in Count VII of the Complaint, it is generally alleged that "[e]ach of Plaintiffs' Mortgages have a governing law provision and, therefore, a violation of Counts I through VI also constitutes a breach of the Mortgage contracts." ECF No. 1-1, p. 29, ¶ 98. It is also alleged that:

> 99. Defendants Deutsche and OneWest breached their contractual obligations to Homeowners by charging and/or collecting attorneys' fees and costs before they were incurred or where not incurred at all. Exhibit K (Mortgage ¶ 14).

> 100. Defendants Deutsche and OneWest breached their contractual obligations to Homeowners by charging and/or collecting attorneys' fees and costs before paying or dispersing such fees and costs to their attorneys for legal services that had not yet been incurred. Exhibit J (Note ¶ 7(E)).

> 101. Defendants, OneWest and Deutsche breached their contractual obligations to Homeowners by charging and/or collecting attorneys' fees and costs that were unreasonable, because, *inter alia*, they were calculated using a flat-rate or a percentage-of-debt-owed basis instead of an hourly rate basis. Exhibit J (Note ¶ 7(E)).

ECF No. 1-1, p. 29, ¶¶ 99-101. The Complaint also states that Defendants Deutsche and OneWest collected fees and costs after the entry of the final foreclosure judgment which were improperly entered by the Prothonotary. Id. at pp. 29-30, ¶¶ 102-105. In addition, citing to "Exhibit K (Mortgage ¶ 14 and ¶ 16)," it is alleged that because the Homeowners' Mortgages required Deutsche and OneWest to comply with Act 6, charging and/or collecting attorneys' fees

in violation of the Act constituted a breach of their contractual obligations and that Homeowners suffered damages as a result of the breaches by paying improper attorneys' fees and legal expenses incurred as a result of the foreclosure proceedings.  Id. at p. 30, ¶¶ 105, 106.

Notwithstanding Mr. Salvati's protestations that there is no indication that the breach of contract claim was intended to be particular to Ms. Jones, there is nothing in these allegations to support a finding that they have been made on behalf of Mr. Salvati.  Mr. Salvati's loan is serviced by BOA, and not OneWest; OneWest serviced Ms. Jones' loan.  Further, Exhibits J and K, cited as offering support for the breach of contract claim, all pertain to Ms. Jones' Note and Mortgage and not Mr. Salvati's Note and Mortgage.  Indeed, there is no reference to Mr. Salvati's Mortgage or any other contract he may have entered into with Deutsche nor any indication as to how Deutsche may have breached any such contract.  The Court also notes that, relative to his breach of contract claim, Mr. Salvati has alleged in the Complaint that Defendants Deutsche and OneWest "collected fees and costs after the entry of the final foreclosure judgment."  Id. at p. 29, ¶ 102.  Because the foreclosure action against Mr. Salvati did not reach final judgment, but was discontinued less than a month after it was initiated, it appears that the fees and costs described in Count VII were collected from Ms. Jones and not from Mr. Salvati.

Further, Mr. Salvati's argument as to why the breach of contract claim should be read as having been brought on his behalf as well as Ms. Jones is unpersuasive.  Specifically, Mr. Salvati argues that citation only to Jones' contract in Count VII was an "illustrative example," and that, because this action has been brought on behalf of a class, there is "a strong presumption against any single claim being individual in nature," and that Count VII was not intended to be an individual cause of action.  ECF No. 31, p. 7 n.2.  Mr. Salvati's argument, however, not only appears to concede that no facts have been alleged relative to a breach of his Mortgage

23

agreement, but it overlooks the fact that in order to represent the class on a particular claim, as Mr. Salvati seeks to do, he himself must have a cause of action on that claim. In re Flonase Antitrust Litigation, 610 F. Supp. 2d 409, 414 (E.D. Pa. 2009), *citing* Zimmerman v. HBO Affiliate Group, 834 F.2d 1163, 1169 (3d Cir. 1987). Because Mr. Salvati has not alleged facts that would permit the inference that Deutsche breached its contractual obligations to him, the breach of contract claim allegedly brought on Mr. Salvati's behalf at Count VII is properly dismissed.

In addition, Mr. Salvati's belated reference to paragraph 22 of his Mortgage in his brief in opposition to Deutsche's Motion does not serve to create a breach of contract claim. A complaint cannot be amended through the brief filed in opposition to a motion to dismiss. See Commonwealth of Pa. ex. rel. Zimmerman v. Pepsico, Inc., 836 F.2d 173, 181 (3d Cir. 1988). More importantly, however, Mr. Salvati has argued in his brief that he has only "pled the *possible* existence of a contract with Deutsche," and that the "terms of the contract, *if one exists*, imposes relevant duties on Deutsche . . . ." ECF No. 31, p. 8. Mr. Salvati also argues that charging fees based on a liquidated fee or percentage basis, "*if implemented by Deutsche*," constitutes a breach of Deutsche's covenant to charge only for work actually performed. Id. In the Court's view, Mr. Salvati's equivocation regarding whether a contract exists in the first instance and whether Deutsche breached that contract, precludes a finding that he has stated a plausible claim for breach of contract. See Iqbal, 556 U.S. at 679, *citing* Fed. Rule Civ. Proc. 8(a)(2) ("where the well-pleaded facts do not permit the court to infer more than the mere **possibility** of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief") (emphasis in original). As such, Deutsche's Motion as to the breach of contract claim brought against it at Count VII is properly granted.

### 3.      McCabe's Motion to Dismiss

#### a.      Act 6 Claim (Count I)

Mr. Salvati has also brought his claim under Act 6 at Count I of the Complaint against Defendant McCabe alleging that McCabe, like the other Defendants, charged and/or collected illegal attorneys' fees and other legal expenses.  ECF No. 1-1, pp. 19-22, ¶¶ 61-74.

McCabe initially argues, somewhat disingenuously, that Mr. Salvati's Act 6 brought against it should be dismissed because, according to the Complaint, "[a]fter September 8, 2008, Act 6 included within its scope residential mortgages with an initial financed unpaid principal balance equal to $217,873.00 *or more*," and that because Mr. Salvati's unpaid principal balance was less than $217,873.00, Act 6 does not apply.  Curiously, Mr. Salvati has not addressed McCabe's argument in this regard or made any attempt to demonstrate to the Court why McCabe's argument should be disregarded.  Nevertheless, although McCabe's argument is factually correct, it is premised on what the Court considers to be a "typo" and does not provide the basis for dismissing Mr. Salvati's Act 6 claim against McCabe.

Act 6 was enacted to protect homeowners who carry residential mortgage loans.  In re Harris-Pena, 446 B.R. 178, 186 (Bankr. E.D. Pa. 2009); Crossley v. Lieberman, 868 F.2d 566, 570 (3d Cir. 1989).  Following the September 2008 amendments, "residential mortgage" was defined as "an obligation to pay a sum of money in an original bona fide principal amount of the base figure *or less*."  41 Pa. Stat. Ann. § 101.  **"Base figure,"** in turn, is defined as "two hundred seventeen thousand eight hundred seventy-three dollars ($217,873)."  Id.  Accordingly, the Act applies to mortgage loans which have a principal balance of $217,873.00 *or less*.  The fact that the Complaint erroneously states that Act 6 applies to loans with a principal balance of $217,873.00 *or more* does not alter that fact.  Because the principal balance of Mr. Salvati's loan

was $138,517.68, it falls within the scope of Act 6 and McCabe's Motion in this regard is properly denied.

To the extent that McCabe alternatively argues that Mr. Salvati has failed to state an Act 6 claim because he has failed to allege facts showing that he actually paid any disputed fees or costs, that argument fails for the same reasons that BOA's and Deutsche's arguments in this regard failed as Mr. Salvati has sufficiently alleged in the Complaint that he paid "at least a portion of the illegal charges" charged to his account; that he "paid some or all of these unauthorized charges; and that Defendants "charged and/or collected" these unreasonable attorneys' fees and illegal expenses. ECF No. 1-1, pp. 10, 20-22, ¶¶ 33, 68, 71, 72, 74.

### b.    Act 6/Act 91 Claims (Count II)

McCabe also argues that Count II of the Complaint, in which Mr. Salvati alleges that the Notice and Foreclosure Complaint filed against him violated Act 6 and Act 91, should be dismissed because the alleged deficiencies set forth in the Complaint, see ECF No. 1-1, p. 23, ¶¶ 78(1)-(9), are either inapplicable to McCabe or are belied by the record.

Mr. Salvati has again failed to specifically address McCabe's arguments in this regard but, rather, merely reiterates the alleged deficiencies complained of in the fact section of his brief which is less than helpful to the Court.

Nevertheless, Mr. Salvati first contends in the Complaint that the Notice sent by McCabe is violative of Act 6 and/or Act 91 because it was never sent. ECF No. 1-1, p. 23, ¶ 78(1). McCabe correctly argues that allegation is belied by the record, or, more accurately, does not apply to Mr. Salvati's loan, since Mr. Salvati has acknowledged that McCabe sent the Notice and has, in fact, appended it to the Complaint. Id. at p. 6, ¶ 13; pp. 71-78.

Second, Mr. Salvati complains that the Notice was not sent by the mortgagee.  Id. at p. 23, ¶ 78(2).  McCabe does not appear to dispute the veracity of the allegation but argues that it cannot be held liable for the error because it prepared the Notice on behalf of Deutsche and, as Deutsche's attorney, is entitled to rely in good faith upon the statements of fact made to him by his client.

"Pennsylvania courts have recognized that 'an attorney is entitled to rely in good faith upon the statement of facts made to him by his client, and is not under a duty to institute an inquiry for the purpose of verifying his statement before giving advice thereon.'" Gigli v. Palisades Collection, L.L.C., No. 06-1428J, 2008 WL 3853295, at *15 (M.D. Pa. Aug. 14, 2008), quoting Meiksin v. Howard Hanna Co., 590 A.2d 1303, 1306 (Pa. Super. 1991).  "To determine whether reliance was in good faith, the contents of the client's statement of facts must be assessed."  Id.  Because it cannot be determined at this juncture what the nature of Deutsche's communications were to McCabe regarding Deutsche's status as the mortgage holder at the time the Notice was sent, the Court is unable to assess whether McCabe's reliance on that information was made in good faith.

Although somewhat nonsensical, Mr. Salvati appears to allege in ¶ 78(3) of the Complaint that the Notice and the Foreclosure Complaint were defective because they were not sent by the same entity that made the decision to accelerate the loan.  Presumably, Mr. Salvati's argument is that the decision to accelerate the loan, as evidenced by the Notice sent to Mr. Salvati dated May 11, 2011, could not have been made by Deutsche because the Mortgage was not assigned to Deutsche until September 17, 2011.  Although McCabe purports to address Mr. Salvati's claim in this regard, its argument appears to speak to the deficiency alleged in ¶ 78(4)

rather that ¶ 78(3).  Because McCabe has not addressed the allegations in ¶ 78(3) or asked that it be dismissed, it remains a viable claim.

In ¶ 78(4), Mr. Salvati contends that the Notice was defective because it was not sent by the entity that filed the Foreclosure Complaint.  McCabe argues that the allegation does not apply because the Notice and the Foreclosure Complaint were both sent on behalf of Deutsche. Indeed, according to the Complaint, the Notice was sent by McCabe and the Foreclosure Complaint was filed by McCabe, both on behalf of Deutsche.  ECF No. 1-1, pp. 6, 7, ¶¶ 13, 16; pp. 72-104.  Whether or not Deutsche was in a position to send the Notice does not negate that it was, in fact, sent on Deutsche's behalf.  Thus, ¶ 78(4) of the Complaint does not appear to state claim.

In ¶¶ 78(5), (6), (7) & (8) of the Complaint, Mr. Salvati finds fault with the Notice because it did not include the mandatory language informing him that he may have the right to refinance his loan, or that the purpose of the face to face meeting with a consumer credit counseling agency was to attempt to resolve the delinquency or default by restructuring the loan payment schedule, and because it did not provide a list of credit counseling agencies.  Mr. Salvati also makes reference to the fact that, prior to the September 2008 amendments, Act 6 required mandatory language informing Homeowners that they have the right to meet with the mortgagee.

McCabe argues that because the Notice instructed Mr. Salvati to take action to save his home from foreclosure and to meet face to face with a consumer credit counseling agency or the mortgagee, the requirements of Act 6 and Act 9 were satisfied.

Act 6 provides that: "The written notice shall clearly and conspicuously state: . . . (6) The right of the debtor, if any, to transfer the real estate to another person subject to the security

interest or to refinance the obligation and of the transferee's right, if any, to cure the default." 41

Pa. Stat. Ann. § 403(c).  Act 91, provides that:

> (b)(1) The agency shall prepare a notice . . . which shall include . . . in plain language and specifically state that the recipient of the notice may qualify for financial assistance under the Homeowner's Emergency Mortgage Assistance Program. This notice shall contain the telephone number and the address of a local consumer credit counseling agency. . . .  This notice shall also advise the mortgagor of his delinquency or other default under the mortgage, including an itemized breakdown of the total amount past due, and that such mortgagor has thirty (30) days, plus three (3) days for mailing, to have a face-to-face meeting with a consumer credit counseling agency to attempt to resolve the delinquency or default by restructuring the loan payment schedule or otherwise."
>
> *     *     *
>
> (5) The notice shall include a statement that the mortgagor must have a face-to-face meeting with one of the designated consumer credit counseling agencies within thirty (30) calendar days plus three (3) additional days for mailing.

35 Pa. Stat. Ann. §1680.403c(b).

> Relative to these complaints, the Notice sent to Mr. Salvati provided the following:

> *To see if [The Homeowner's Mortgage Assistance Program] can help. you must MEET WITH A CONSUMER CREDIT COUNSELING AGENCY OR THE MORTGAGEE THAT SENDS THIS NOTICE WITTHIN 33 DAYS. . . .*

> *     *     *

> <u>*TEMPORARY STAY OF FORECLOSURE*</u> -- Under the Act, you are entitled to a temporary stay of foreclosure on your mortgage for thirty-three (33) days from the date of this Notice.  During that time you must arrange and attend a "face-to-face" meeting with one of the consumer credit counseling agencies listed at the end of this Notice or the mortgagee that sends this notice.

> *     *     *

> <u>*CONSUMER CREDIT COUNSELING AGENCIES*</u> -- If you meet with one of the consumer credit counseling agencies at the end of this notice, the lender may NOT take action against you for thirty-three days after the date of the meeting.

> *     *     *

*APPLICATION FOR MORTGAGE ASSISTANCE* -- . . . . If you have tried but are unable to resolve this problem with the lender, you have the right to apply for financial assistance from the Homeowner's Emergency Mortgage Assistance Program. To do so, you must fill out, sign and file a completed Homeowner's Emergency Mortgage Assistance Program Application with one of the designated consumer credit counseling agencies listed at the end of this Notice.

\*       \*       \*

**YOU MAY ALSO HAVE THE RIGHT:**

\*TO SELL THE PROPERTY TO OBTAIN MONEY TO PAY OFF THE MOTGAGE DEBT OR TO BORROW MONEY FROM ANOTHER LENDING INSTITUTION TO PAY OFF THIS DEBT.

\* TO HAVE THIS DEFAULT CURED BY ANY THIRD PARTY ACTING ON YOUR BEHALF.

\*       \*       \*

**FOR CONSUMER CREDIT COUNSELING AGENCIES SERVING YOUR COUNTY, PLEASE SEE ATTACHED LIST.**

ECF No. 1-1, pp. 72-77. The contact information for the agency serving Beaver County, Pennsylvania, was indeed attached to the Notice, which also provided Mr. Salvati with information on how to contact Deutsche as "the Lender."

The Court notes at the outset that it has found no requirement under either Act 6 or Act 91, that the Notice must include a list of consumer credit agencies. As set forth in Mr. Salvati's Complaint, Act 91 requires only that the notice contain the telephone number and address of the local consumer credit counseling agency. ECF No. 1-1, p. 12, ¶ 39. See 35 Pa. Stat. Ann. §1680.403c(b)(1). That information was provided in the Notice sent to Mr. Salvati and, thus, to the extent Mr. Salvati seeks to hold McCabe liable for that deficiency, the claim is properly dismissed. ECF No. 1-1, p. 78(8).

With respect to the alleged deficiencies set forth in ¶¶ 78 (5)(6) and (7), the Court finds that the Notice sufficiently apprizes Mr. Salvati of his right to refinance his loan as required under Act 6. Although the word "refinance" does not appear in the Notice, Mr. Salvati was clearly advised that he had the right to borrow money from another lending institution to pay off his debt. ECF No. 1-1, p. 77. Because McCabe cannot be responsible for a violation that did not occur, Mr. Salvati's claim at ¶ 78(5) should be dismissed.

The Court finds, however, that the Notice does not sufficiently inform Mr. Salvati that the purpose of meeting with a consumer credit counseling agency is "to attempt to resolve the delinquency or default by restructuring the loan payment schedule or otherwise." 35 Pa. Stat. Ann. § 1680.403c(b)(1). In fact, the Notice is devoid of any language suggesting that Mr. Salvati's loan payment schedule could be "restructured" and, thus, appears to violate Act 91. Because McCabe appears to have drafted and sent the Notice to Mr. Salvati, Mr. Salvati has stated a viable claim against McCabe in ¶ 78(6).

The Notice also appears to run afoul of Act 91 in that it contains language suggesting that the requirement that the mortgagor meet with a consumer credit counseling agency is equivocal. As pointed out by Mr. Salvati, prior to the 2008 amendments being enacted, the debtor had the option of having a face-to-face meeting with either the mortgagee who sent the notice or a consumer credit counseling agency and neither meeting was mandatory. After the amendments went into effect, however, the language giving the debtor the right to meet with the mortgagee was eliminated and language requiring the mortgagor meet with a consumer credit counseling agency was added. The Notice sent to Mr. Salvati, which was well after the 2008 amendments went into effect, indicates that Mr. Salvati had the option of meeting with either the

mortgagee or a consumer credit counseling agency and, thus, appears to run afoul of Act 91. Mr. Salvati, therefore has stated a claim against McCabe in ¶ 78(7).

Further, in paragraph 78(9), Mr. Salvati simply states that "[t]he foreclosure plaintiff was not the noteholder." In response, McCabe simply states that this allegation does "not apply because the foreclosure action plaintiff (Deutsche) was the noteholder," and cites generally to Exhibits C and H to the Complaint. Exhibit C, however, is a copy of Mr. Salvati's Secondary Mortgage which is not at issue here, and Exhibit H is a copy of the Foreclosure Complaint which merely states that Mr. Salvati's mortgage was assigned to Deutsche by New Century on September 20, 2011. 1-1, p. 83, ¶ 4. McCabe has not pointed to any language indicating that Deutsche also held the note. In light of Mr. Salvati's allegations in the Complaint that only noteholders can commence foreclosure proceedings in Pennsylvania; that the Foreclosure Complaint filed against Mr. Salvati is silent as to whether it was filed by the noteholder; and that many of Defendants' Foreclosure Complaint were not filed by noteholders but rather by mortgagees and/or servicers, McCabe's simple statement that Deutsche was the note holder, without more, does not render Mr. Salvati's claim implausible. McCabe's Motion insofar as it seeks dismissal of the claim brought in ¶ 78(9) of the Complaint therefore should be denied.

Finally, with respect to Count II, McCabe's argument that Mr. Salvati's notice claims under Act 91 should be dismissed because there is no private right of action under Act 91, has already been rejected by the Court. Section 502 of Act 6 allows for recovery for charges paid that are prohibited by Act 6 "or otherwise by law." 41 Pa. Stat. Ann. § 502. It therefore follows that Act 6 allows for recovery of fees paid in violation of Act 91 insofar as the violation resulted in illegal charges being paid. Because Mr. Salvati, in essence, has alleged that McCabe's failure to comply with the requisite notice requirements precipitated the filing of an improper

32

Foreclosure Complaint that included illegal charges -- some of which he has paid, it appears that Mr. Salvati has properly stated a claim at Count II.

### c.  UTPCPL Claim (Count III)

Mr. Salvati's claim under the UTPCPL at Count III of the Complaint has also been brought against McCabe.  McCabe argues that this claim fails as a matter of law because the UTPCPL does not apply to claims against attorneys arising out of the practice of law.  To support its position, McCabe cites to <u>Beyers v. Richmond</u>, 937 A.2d 1082 (Pa. 2007), in which the Supreme Court of Pennsylvania was asked to decide whether the UTPCPL applied to an attorney's conduct in collecting and distributing settlement proceeds.  The Court found that collecting and distributing settlement proceeds fell within the boundaries of "practicing law" and, thus, under the Pennsylvania Constitution, was within the exclusive power of the Supreme Court to regulate.  <u>Id.</u> at pp. 1089-1090.  <u>See</u> Pa. Const. Art. V §§ 10(a) and 10(c).  Having promulgated Rules of Professional Conduct and Rules of Disciplinary Enforcement, which the Court found exclusively (and adequately) addressed the misconduct complained of in the case, it held that the UTPCPL did not apply.

In so finding, however, the Court appeared to distinguish the case before it from cases where the misconduct at issue was not related to the practice of law or the attorney's "legal representation."  <u>Id.</u> at p. 1089.  The Court specifically cited to <u>Daniels v. Baritz</u>, No. 02-7929, 2003 WL 21027238 (E.D. Pa. April 30, 2003), in which the defendant attorney was sued for his role in commencing allegedly unwarranted eviction proceedings on behalf of his landlord client in order to extort money from the plaintiff that he did not owe.  The <u>Daniels</u> Court found that debt collection is an act in trade or commerce to which the UTPCPL applied.  <u>Id.</u> at *5.  <u>See</u> 73 Pa. Stat. Ann. § 201-3 (declaring unlawful "[u]nfair methods of competition and unfair or

deceptive acts or practices in the conduct of any trade or commerce").  While recognizing that "consumer protection laws generally do not apply to an attorney's actions 'arising out of the actual practice of law,'" the Court found that Daniels' UTPCPL claim "challenge[d] [defendant's] debt collection practices, and not the sufficiency of his legal representation," and permitted the claim to go forward.  Daniels v. Baritz, 2003 WL 21027238, at *6.  Because the issue before the Beyer Court involved "professional misconduct," it found that Daniels was distinguishable.  Beyers v. Richmond, 937 A.2d at 1089.  Thus, implicit in the Court's finding that the Pennsylvania Supreme Court has the exclusive power to govern the conduct of attorneys practicing law within the Commonwealth is that conduct that falls outside the ambit of the attorney's practice of law, including conduct associated with debt collection, is not governed by the Supreme Court and is subject to the prohibitions of the UTPCPL.

Indeed, the District Court of the Eastern District of Pennsylvania has recently discussed these cases and the applicability of the UTPCPL to attorneys who engage in debt collection practices and found that the Beyer Court not only did *not* hold that debt collection constituted the practice of law, but that it acknowledged that "debt collection" is "an act in trade or commerce" within the meaning of the UTPCPL.  Yelin v. Swartz, 790 F. Supp. 2d 331, 337-38 (E.D. Pa. 2011).  The Court in Yelin therefore concluded that "in determining whether a plaintiff has stated a claim under the UTPCPL, the proper focus is on the act described in the complaint," and that "[i]f the complaint does not allege that the defendant committed misconduct during the course of practicing law, the mere fact that the defendant happens to be an attorney will not bar a UTPCPL claim."  Id.

Here, Mr. Salvati has not alleged that McCabe's misconduct was committed during the course of practicing law but, rather, contends only that McCabe filed the Foreclosure Complaint

on behalf of Deutsche and that it violated the UTPCPL by overcharging and or misrepresenting the amount that Mr. Salvati owed. 1-1, pp. ¶¶ 6, 16, 81. Because Mr. Salvati has not challenged the adequacy of McCabe's legal representation, but rather the propriety of its debt collection practices, McCabe's Motion to Dismiss in this regard is properly denied.

### d. FDCPA and FCEUA Claims (Count IV & V)

Mr. Salvati's brings claims against McCabe at Counts IV and V of the Complaint under Sections 1692e(2)(A) and 1692f(1) of the FDCPA and Section 2270.4(a) of the FCEUA.

Section 1692e(2)(A) of the FDCPA provides that:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
> * * *
>
> (2) The false representation of--
>
> (A) the character, amount, or legal status of any debt.

15 U.S.C. § 1692e(2)(A). Similarly, Section 1692f(1) provides that:

> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> (1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

15 U.S.C. § 1692f(1). Section 2270.4(a) of the FCEUA provides that: "It shall constitute an unfair or deceptive debt collection act or practice under this act if a debt collector violates any of the provisions of the Fair Debt Collection Practices Act." Thus, a violation of either Section 1692e(2)(A) or 1692f(1) of the FDCPA will generally constitute a violation of the FCEUA. See Trunzo v. Citi Mortgage, 876 F. Supp. 2d at 538.

Mr. Salvati has alleged in the Complaint that McCabe violated the FDCPA, and by extension the FCEUA, by, *inter alia*, demanding fees in the Foreclosure Complaint that were neither reasonable nor actually incurred and that were in excess of the $50.00 permitted under the Section 406 of Act 6 for fees actually incurred prior to the commencement of foreclosure. ECF No. 1-1, pp. 25-26, ¶¶ 84-90. See 41 Pa. Stat. Ann. § 406(3).[5]

McCabe argues that Mr. Salvati's claims under the FDCPA and FCEUA should be dismissed because Mr. Salvati has not provided any factual support in the Complaint for his assertions that the attorneys' fees charged in the Foreclosure Complaint "were unincurred or were incurred during the 33-day period." ECF No. 15, p. 10. McCabe also argues in its reply brief that under a recent decision issued by the United States Court of Appeals for the Third Circuit, it does not fall within the definition of "debt collector" under the FCEUA and, thus, Mr. Salvati's claim under that the FCEUA fails as a matter of law.

In Glover v. F.D.I.C., 698 F.3d 139 (3d Cir. 2012), which was filed after McCabe submitted its Motion to Dismiss in this case, the United States Court of Appeals for the Third Circuit found that the definition of "debt collector" under the FDCPA differed from that under the FCEUA, and that while an attorney who participates in the collection of debts may qualify as a debt collector under the FDCPA, such a defendant may not fall under the narrower definition of debt collector under the FCEUA. Id. at 152. Indeed, the FCEUA's definition of debt collector includes "[a]n attorney, whenever such attorney attempts to collect a debt, as herein defined, *except in connection with the filing or service of pleadings or discovery or the prosecution of a lawsuit to reduce a debt to judgment*." Id. (emphasis added). See 73 Pa. Stat. Ann. § 2270.3(3)(ii). Because the defendant attorneys in Glover were acting in connection with

---

[5] Mr. Salvati has also alleged that McCabe violated the FDCPA and the FCEUA by demanding the fees set forth in the Foreclosure Complaint before a Notice that complied with Act 6 and/or Act 9 had been sent. McCabe, however, has not addressed this specific claim in its Motion; consequently, neither has the Court and the claim remains viable.

prosecution of a lawsuit to reduce a debt to judgment when they filed a Foreclosure Complaint demanding payment of allegedly unlawful attorneys' fees, the Court held that Glover's FCEUA claims were properly dismissed.  Glover v. F.D.I.C., 698 F.3d at 147, 153.

In the instant case, like in Glover, McCabe filed the Foreclosure Complaint demanding payment of purportedly illegal attorneys' fees.  It therefore was acting in connection with the prosecution of a lawsuit to reduce a debt to judgment and does not qualify as a debt collector under the FCEUA.  Mr. Salvati's FCEUA claim brought against McCabe at Count V therefore fails.

McCabe does not dispute that it falls under the definition of debt collector under the FDCPA.  As previously discussed, however, McCabe does dispute whether Mr. Salvati has pled sufficient facts to support his claim that McCabe charged attorneys' fees that were not actually incurred and that were in excess of the $50.00 maximum for charges incurred before the 33-day right to cure had expired and prior to the commencement of the foreclosure proceedings.

To support his claim, Mr. Salvati has alleged in the Complaint that:

> The attorney's fees demanded ($1,450.00) were not itemized and were not alleged to be based on work actually performed by or costs incurred by McCabe or invoiced to . . . [Deutsche].  [ECF No. 1-1, p. 7, ¶ 18].

> The respective Foreclosure Complaints . . . did not provide any supporting facts or documents about how the demanded foreclosure legal expenses and attorneys' fees were calculated despite the requirement that documents relied on must be attached to the complaint.  See Pa. R.Civ. P. 1019(i).  [ECF No. 1-1, p. 10, ¶ 31].

> Unincurred foreclosure-related attorneys' fees and legal expenses are not authorized under the Mortgage and Note.  Moreover, applicable Pennsylvania statutory law (Act 6, §403(3)) prohibits flat rate or percentage based attorneys' fee demands in mortgage foreclosure complaints.  [ECF No. 1-1, p. 10, ¶ 32].[6]

---

[6] The Court notes here that Section 403 of Act 6 does not have a subsection (3).  Moreover, Section 403 speaks to notice requirements and not attorneys' fees.  The Court therefore assumes that Mr. Salvati is proceeding under

[Mr. Salvati's] account[ ] currently reflects paid and unpaid foreclosure-related attorneys' fees and legal expenses allegedly incurred and un-incurred by the Defendants. [ECF No. 1-1, p. 10, ¶ 33].

Act 6, further provides that "no attorneys' fees may be charges for legal expenses incurred prior to or during the thirty-day notice period provided in section 403 of this act" and that only fifty dollars ($50.00) may be charged for attorneys' fees that are 'reasonably and actually incurred" during the period immediately following the expiration of the 33-day notice period but prior to the commencement of foreclosure. See 41 P.S. §406(3). [ECF No. 1-1, p. 25, ¶ 86].

McCabe violated the FDCPA by demanding and/or collecting fees that were unlawful under Act 6 and/or Act 91. In the Foreclosure Complaint, Defendant demanded fees in access [sic] of fifty dollars ($50.00) that could only have been incurred, if at all, prior to the commencement of foreclosure. Furthermore, Defendant, in the Foreclosure Complaints that it caused to be filed, requested attorneys' fees that were neither reasonable nor actually incurred. [ECF No. 1-1, p. 26, ¶ 88].

In this Court's view, these assertions are sufficient to state a plausible claim under the FDCPA against McCabe for misrepresenting the character, amount and legal status of the debt owed. Indeed, McCabe appears to concede as much arguing in its reply brief only that Mr. Salvati's argument that McCabe "could not charge in excess of $50.00 prior to the filing of the Foreclosure Complaint" is not contained in Mr. Salvati's Complaint but is only raised in Mr. Salvati's response to McCabe's Motion to Dismiss. ECF No. 38, p. 4. McCabe's argument, however, is unfounded. As set forth above, Mr. Salvati has alleged in the Complaint that Act 6 prohibits more than $50.00 to be charged in attorneys' fees for work incurred during the period immediately following the expiration of the 33-day notice period but prior to the commencement of foreclosure, and that McCabe violated the FDCPA be demanding and/or collecting fees in excess of $50.00 when they could only have been incurred, if at all, prior to the commencement of foreclosure. ECF No. 1-1, pp. 25, 26, ¶¶ 86, 88. See 41 Pa. Stat. Ann. § 406(3). Thus,

---

Section 406(3) which states, *inter alia*, that the fees must be reasonable and actually incurred. 41 Pa. Stat. Ann. ¶ 406(3).

McCabe's argument is without merit and does not provide the basis for dismissing Mr. Salvati's FDCPA claim brought against it.

**D.      CONCLUSION**

For the foregoing reasons, is respectfully recommended that the Motion to Dismiss submitted on behalf of Defendant BOA, ECF No. 10, be granted as to Mr. Salvati's claim brought under Section 406 of Act 6 at Count I of the Complaint and as to Mr. Salvati's claim brought pursuant to Section 201-2(4)(v) of the UTPCPL at Count III of the Complaint, and denied in all other respects.  It is further recommended that the Motion to Dismiss submitted on behalf of Defendant Deutsche, ECF No. 12, be granted as to Mr. Salvati's claim brought pursuant to Section 201-2(4)(v) of the UTPCPL at Count III of the Complaint and as to the breach of contract claim brought at Count VII of the Complaint, and denied in all other respects. It is finally recommended that the Motion to Dismiss submitted on behalf of Defendant McCabe, ECF No. 14, be granted as to Mr. Salvati's claims brought in paragraphs 78(1), 78(4), 78(5) and 78(8) of Count II of the Complaint pursuant to Act 6 and/or Act 9 and as to Mr. Salvati's FCEUA claim brought at Count V of the Complaint, and denied in all other respects.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Local Rule 72.D.2, the parties are permitted to file written objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to timely file objections will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187, 193 n. 7 (3d Cir. 2011). Any party opposing objections may file their response to the objections within fourteen (14) days thereafter in accordance with Local Civil Rule 72.D.2.

Respectfully submitted,


/s/ Maureen P. Kelly
MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE


Dated: 1 February, 2013


cc:    The Honorable Arthur J. Schwab
      United States District Judge

      All counsel of record by Notice of Electronic Filing